Meek v. Lange.

—W. F. B.

## H. H. MEEK v. WILLIAM C. LANGE.

FILED SEPTEMBER 18, 1902. No. 12,035.

Commissioner's opinion, Department No. 1.

Executory Contract: FAMILY HOMESTEAD: NON-PERFORMANCE: ACTION: DAMAGES FOR LOSS OF BARGAIN: WIFE NOT PARTY. Under section 4, chapter 36, Compiled Statutes of Nebraska, an executory contract for the sale of the family homestead, to which the wife is not a party, is invalid, and its non-performance does not furnish a basis for a recovery of damages for the loss of the bargain.

ERROR from the district court for Clay county. Tried below before STUBBS, J. *Reversed.*

*Leslie G. Hurd,* for plaintiff in error.

*E. E. Hairgrove* and *A. S. Loving* (*B. Elizabeth Lane* and *Wilbur R. Lemley,* of counsel), *contra.*

HASTINGS, C.

Two questions seem to be raised in this case: First, whether or not damages for loss of the bargain can be recovered against one who, without the assent of his wife, makes an executory contract for the sale of his family homestead, which the wife subsequently refuses to carry out; second, if the contract is valid and damages recoverable, when was it broken, and at what date did the value of the land, less the purchase price, become the index of the value of the buyer's bargain, and consequently of the amount of his damage? Of course the second question is of no importance if the first is decided in defendant's favor. The action is for damages upon an executory agreement made June 23, 1899, by which Meek agreed to convey to Lange the northwest quarter of section 8, town 6, range 5 west, in consideration of $4,000,—$250 cash in hand and the rest on or before January 1, 1900, when deed was to be made, and possession was to be given March 1, 1900. Meek was a married man, with a family, residing on the premises in question. The plaintiff set out his contract, alleging tender of performance on his part; says that on or about August 1, 1899, he received from defendant the following letter:

"*W. C. Lange, Sutton, Nebr.*—DEAR SIR: You are hereby notified that my wife Lizzie Meek declines and refuses to join in the conveyance for the sale of our place, as follows: The N. W. ¼ sec. No. 8, Sheridan township, Clay county, Nebr. That I hereby notify you that I will refuse to comply with the terms of the contract entered into between you and myself for the sale of said land. That I did on June 29th, 1899, tender back to Charles Moon, your agent, the certificates of deposit you gave to me as part

payment of said contract, and that I have authorized the said Charles Moon to deliver the same to you. You are further notified that we will hold possession of said premises.                    Respectfully,                H. H. Meek."

He claimed general damages of $700, and special damages of $299 more. Defendant admitted ownership of the land and execution of the agreement. He alleged the homestead character of the premises, the making of the contract in good faith, and the refusal of his wife to execute the conveyance, without influence or request on his part, and against his wishes. This matter was entirely striken out of the answer by the sustaining of a demurrer to the paragraphs containing it, and the evidence of the homestead character of the premises, and of the defendant's good faith in making the contract, was excluded by the court and verdict and judgment rendered for $250.

A great many errors are assigned in the petition which the defendant brings to reverse this judgment, but they all bring up only the two questions, namely, the extent to which the homestead character of the premises constituted a defense to the action, and whether the breach of the contract occurred on June 29 or August 1, and therefore whether the evidence of the value of the land should have been directed to the former date or to the latter. The plaintiff in error, defendant below, contends, in the first place, that a contract by the husband for an alienation of the homestead was not only unenforceable by way of specific performance, as was held in *Violet v. Rose,* 39 Nebr., 660, *Larson v. Butts,* 22 Nebr., 370, and *Clarke v. Koenig,* 36 Nebr., 572, but that it was also unenforceable in an action for damages for non-performance. It is admitted that there is no Nebraska case so holding in exact terms; but it is claimed that the totally void character of such contracts is sufficiently established by the above cases, with *Prout v. Burke,* 51 Nebr., 24, and *Horbach v. Tyrrell,* 48 Nebr., 514. The doctrine that the contract was totally void, and would support no action for damages, is certainly supported by text-writers and many decisions.

57

Waples, Homestead & Exemptions, pp. 384, 394 and note 6; 15 Am. & Eng. Ency. Law [2d ed.], 670; *Weitzner v. Thingstad,* 55 Minn., 244; *Cowgell v. Warrington,* 66 Ia., 666, 24 N. W. Rep., 266; *Barnett v. Mendenhall,* 42 Ia., 296; *Hodges v. Farnham,* 49 Kan., 777, 31 Pac. Rep., 606; *Thimes v. Stumpff,* 33 Kan., 53, 5 Pac. Rep., 431. In the case last cited it is held that the contract for the sale of a homestead made by the husband alone, is so entirely void that a payment made on it by the vendee can not be recovered back. We are cited to the Texas cases of *Wright v. Hays,* 34 Tex., 253; *Allison v. Shilling,** 27 Tex., 450; *Brewer v. Wall,*† 23 Tex., 585, and *Goff v. Jones,* 70 Tex., 572, 576, and to *Henderson v. Kirkland,* 28 So. Rep. [Ala.], 674, as establishing a different rule. These Texas cases are examined elaborately by the supreme court of Iowa in *Barnett v. Mendenhall,* above, and are found by that court to contain *dicta* to the effect that damages in such cases may be recovered; and are found to hold that a husband's sole agreement to convey a homestead is not void in Texas, and that it is enforceable after the death of his wife. The Alabama case holds that the provision of the Alabama constitution that no mortgage or alienation of the homestead shall be valid without the wife's assent has the effect to render executory contracts, even when signed by her, unenforceable. The holding is that such constitutional provision has reference only to actual conveyances, and not to executory contracts; and when she has signed such a contract, there is still left to her a *locus penitentiæ* until she actually signs the conveyance. The Iowa, Kansas and Minnesota statutes are all substantially like ours in providing that no conveyance or incumbrance of the homestead shall be valid unless signed and acknowledged by both husband and wife. The Texas and Alabama constitutions provide, as above stated, against any mortgage or other alienation without the assent of the wife. This leaves room for a possible holding that mere executory contracts are valid, at least, for the purpose of collecting damages against the husband for non-performance. It is

---

* 86 Am. Dec., 622.                              † 76 Am. Dec., 76.

to be noted, however, that no case of such recovery is cited from those states or any other. On the other hand, in *Berlin v. Burns*, 17 Tex., 532, a note given in settlement for damages on a contract by the husband alone to sell a homestead, which the wife refused to convey, was held to be without consideration. The court says that to allow such damages would be against the policy of the homestead law.

It is urged that the contract would have been binding on the plaintiff in this present case, and, if the land had declined in value, on a tender of deed by defendant and wife, he could have been compelled to pay the price. This result does not follow unless the contract is held good in part. If the holdings of the courts of Kansas, Iowa and Minnesota and our own, as far as they have gone, that the contract is totally null unless executed with due formality by the wife, are followed, then both parties are released, unless both are held to the full performance. It seems clear that justice is much more certain to be reached under this policy, than by holding the contract good for some purposes and as to some parties, and void as to others. It does not seem that anything would be gained by holding a contract which is entirely invalid for the effecting of its main purpose good for any other. In the present case the only damages allowed by the trial court were damages for the loss of a bargain. As the premises in question were openly occupied at the time as a family homestead, there was presumptive knowledge on the plaintiff's part of that fact. Plaintiff must, of course, be presumed to be aware of the homestead law, and the contract must be held to have been made with such law in view. To allow plaintiff damages for loss of his bargain in this case would be to allow him damages for the loss of something which he never had. As a matter of fact, the agreement that he made was void, and he was chargeable with notice of that fact. We are constrained to think that the learned district court erred in striking out as a defense the fact that the premises were the homestead of defendant's family. It was found by the jury that the value of the farm was in

excess of the homestead limit. In *Weitzner v. Thingstad, supra,* it was held proper to overrule a demurrer to an answer to claim for damages setting up that a part of the premises agreed to be conveyed were defendant's family homestead. It was held that the defense was good *pro tanto.* It is at least equally available here. Doubtless, in case of bad faith, or where the action of defendant has caused special damages, a right of action would arise for such injury. But it would seem entirely inconsistent to allow a recovery of damages for the loss of a bargain which plaintiff made in full view of evident facts with one whom those facts rendered incompetent to sell the property. As above stated, only damages for loss of the bargain were allowed in this judgment. The judgment, therefore, can not stand. Possibly the plaintiff is entitled to nominal damages for the absolute refusal to convey any of the premises, as they were found to be worth more than $4,000. The homestead right evidently does not protect defendant as to more than $2,000 worth. To be sure, the homestead does not appear to have been set off, and the contract is an entirety; but it is not thought that defendant can avail himself of that fact. For failure to convey the homestead property, the plaintiff should not be allowed to recover damages. He was entitled, however, if he so chose, to accept a partial and defective performance. 3 Pomeroy, Equity Jurisprudence, sec. 1405, note. For the absolute refusal of defendant to render that, it would seem that plaintiff should have nominal damages.

No good purpose would be served by any review of the evidence as to whether the refusal to carry out the contract was on June 29 or August 1.

It is recommended that the judgment of the district court be reversed, and the cause remanded for further proceedings according to law.

Day and Kirkpatrick, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and

the cause remanded for further proceedings according to law.

#### REVERSED AND REMANDED.

NOTE.—*Exemption.*—*Homestead.*—The common law only allowed as exempt the necessary wearing apparel. It was even held: "upon a *fieri facias* the sheriff may take anything but wearing clothes; nay, if the party hath two gowns, he may take one of them." *Hardistey and Barney,* Term of St. Hilary, Anno 8 William III., *in Banco Regis,* Comberbach's Reports, 356. By the Mosaic law, the upper millstone and the nether were exempt from a pledge. So far as the writer is informed, Moses was the author of the first exemption law. Homestead exemptions exist in every state in the union.—W. F. B.