Argued and submitted May 16, at Pendleton, Oregon, resubmitted In Banc December 4, 1985, reversed and remanded January 22, reconsideration denied March 7, petition for review denied March 25, 1986 (300 Or 704)

**SEATTLE-FIRST NATIONAL BANK,**
*Appellant,*

*v.*

**UMATILLA COUNTY,**
*Respondent.*

(84-5-477; CA A33950)

713 P2d 33

W. G. Kelly Clark, Portland, argued the cause for appellant. With him on the briefs were John Chally, and Bouneff, Chally & Marshall, Portland.

Douglas E. Hojem, Pendleton, argued the cause for respondent. With him on the brief were Patricia Sullivan, and Steven H. Corey, Pendleton.

WARREN, J.

Young, J., dissenting.

## WARREN, J.

Plaintiff was the owner by assignment of a beneficial interest in a trust deed relating to property in defendant Umatilla County. The assignment was recorded in the mortgage records of Umatilla County on November 5, 1979. The record owner of the encumbered property failed to pay real property taxes for the years 1977 to 1981. The county instituted a tax foreclosure action on May 7, 1982, took a default and obtained a decree of foreclosure on June 16, 1982. The one-year redemption period, ORS 312.120, expired on June 17, 1983, and the county obtained a tax deed on June 20, 1983.

The county did not mail or personally serve plaintiff with any notice of the tax delinquency or the foreclosure action, and plaintiff had no actual notice of the proceeding. The county only published notice as required by *former* ORS 312.040(1),[1] which provided that notice by publication of

---

[1] *Former* ORS 312.040 provided:

"(1) Notice of each foreclosure proceeding, except as otherwise provided in subsection (2) or (3) of this section, shall be given exclusively by four weekly publications of the foreclosure list in a newspaper of general circulation in the county, to be designated by the county court or board of county commissioners. The price charged by the newspaper shall be at the legal rate as provided by law. The publication of the notice shall be sufficient service on each person interested in any of the properties, and it shall not be necessary to mail a copy of the notice to the owner or to any other person interested in any property, except that a copy of the newspaper notice shall be mailed by the county to each incorporated city in the county. All persons owning or claiming to own, or having or claiming to have, any interest in any property included in the foreclosure list are required to take notice of such proceeding and of all steps thereunder.

"(2) If it is deemed expedient to do so, notice of the institution of the foreclosure proceeding may be given by personal service. Notice by personal service shall be in lieu of service by publication or certified mail as to the defendant or defendants so served, and it shall not be necessary to include in the publication of the foreclosure list the names of such defendants or the descriptions or other matters relating to their respective properties.

"(3) Service of notice of foreclosure proceedings may be made by certified mail. If so made, the persons served shall be the owner or owners reflected in the county records under ORS 311.555 and any other person whose interest in the property is reasonably ascertainable from the county records and service under subsection (1) of this section need be published only once."

This version of ORS 312.040 was in effect in 1982 and 1983 and applies to this case. The 1985 legislature amended ORS 312.040(1) to read:

foreclosure proceedings is sufficient service on each person interested in the property and that it is not necessary to mail notice to or to serve such interested persons personally. Plaintiff brought this action challenging the validity of the foreclosure, claiming that foreclosure based on the notice provisions of former ORS 312.040(1), when plaintiff's interest was ascertainable from the public records, deprived it of property without the due process of law guaranteed by the Fourteenth Amendment to the United States Constitution.[2]

The county contends that the availability of a procedure whereby a person holding a recorded lien may file a request for mailed notice of a foreclosure list provided the lienholder with all the process which is due it and renders *former* ORS 312.040(1) constitutionally adequate. ORS 312.140 provides that a holder of a recorded lien on real property may file a request to receive mailed notice of any foreclosure list that includes the encumbered property.[3] The

---

"(b) In addition, notice of the foreclosure proceeding shall be sent by certified mail to:

"* * * * *

"(B) The holder of any lien or other interest in the properties recorded in the county deed or mortgage records on or after January 1, 1986." Or Laws 1985, c 613, § 29.

[2] Plaintiff also claims that its right to "due process" guaranteed by Article I, section 10, of the Oregon Constitution was violated. The Oregon Constitution does not contain a Due Process Clause similar to that of the Fourteenth Amendment, and we consider only the federal constitutional claim. *See State v. Clark,* 291 Or 231, 235 n 4, 630 P2d 810, *cert den* 454 US 1084 (1981); Linde, "Without 'Due Process' —Unconstitutional Law in Oregon," 49 Or L Rev 125, 145-46 (1970). Plaintiff does not raise an equal privileges or equal protection claim under either Article I, section 20, of the Oregon Constitution or the Fourteenth Amendment. *Compare Grant County v. Guyer,* 296 Or 14, 23-24, 672 P2d 702 (1983).

[3] ORS 312.140 provides, in pertinent part:

"(1) A mortgagee or other holder of a recorded lien on real property may file with the tax collector a request that notice of any foreclosure list including such real property be given to such mortgagee or other lienholder. The request shall contain the name and address of the person filing it, the description of the property and the name of the owner or reputed owner thereof, and the date of expiration of the mortgage or lien. Notice need not be given after expiration of the mortgage or lien, unless a further request therefor is filed. * * * All requests for notices of certificates of delinquency filed pursuant to previously existing laws have the force and effect of requests filed under this section.

"(2) Whenever any property described in the request for notice is included in a foreclosure list or in a certificate of delinquency issued to any irrigation or drainage district the tax collector shall send by registered mail written notice thereof to the mortgagee or other lienholder. At the time of mailing the notice the tax collector shall note that fact in ink in the latest tax roll opposite the

trial court dismissed plaintiff's complaint for failure to state a claim for relief, ORCP 21A(8), and plaintiff appeals. Defendant concedes that, under *Grant County v. Guyer,* 296 Or 14, 22, 672 P2d 702 (1983), published notice which is not "supplemental to other statutorily mandated notices given by mail" does not provide due process to a person whose interest is recorded. The issue in this case is whether the requested notice provisions of ORS 312.140 rendered the published notice provided by *former* ORS 312.040(1) constitutionally adequate as to record lienholders. We conclude that they did not.

*Mullane v. Central Hanover Tr. Co.,* 339 US 306, 70 S Ct 652, 94 L Ed 865 (1950), is the landmark case applying the Due Process Clause to notice by publication. The case involved a proceeding for the judicial settlement of a common trust fund. The only notice of the proceeding given to the beneficiaries was by publication in a local newspaper. The Court held that, as to beneficiaries whose names and addresses were known to the trustees, notice by publication was not adequate to provide due process. Before an action may be taken which will affect a person's property interest, the Fourteenth Amendment requires a state to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 US at 314. *See also Schroeder v. City of New York,* 371 US 208, 83 S Ct 279, 9 L Ed 2d 255 (1962).

In *Mennonite Board of Missions v. Adams,* 462 US 791, 103 S Ct 2706, 77 L Ed 2d 180 (1983), the Court held unconstitutional an Indiana statute which provided only for published notice to a mortgagee of the foreclosure of encumbered property. Indiana law provided for notice of the foreclosure sale by certified mail to the owner of the property but did not provide for notice by mail or personal service to mortgagees. The owner was also entitled to receive notice of his statutory right to redeem the property after foreclosure and before delivery of the deed to the purchaser at the

---

description of the property. The notation in the tax roll is prima facie evidence that the notice was mailed. * * *"

This statute remains in effect.

foreclosure; a mortgagee received no such notice. An amendment to the Indiana Code under which a mortgagee could request notice of foreclosure, similar to ORS 312.140, was not before the Court.

The Court in *Mennonite* first noted that, because a mortgagee possesses a substantial property interest which is significantly affected by a tax sale, it is entitled to notice reasonably calculated to apprise it of the pending sale. The Court held:

> "* * * [W]hen the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of Mullane. * * *

> "Neither notice by publication and posting, nor mailed notice to the property owner, are means 'such as one desirous of actually informing the [mortgagee] might reasonably adopt to accomplish it.' Mullane, 339 US at 315 * * *." 462 US at 798. (Footnote omitted.)

The majority in *Mennonite* rejected the dissent's argument that, because the mortgagee could have taken steps to protect its interest, the state's burden should be lower. The dissent argued that the mortgagee could have inspected the published and posted notices and the tax records or required that the mortgagor show that tax payments were current or deposit tax monies in escrow. The majority stated:

> "Personal service or mailed notice is required even though sophisticated creditors have means at their disposal to discover whether property taxes have not been paid and whether tax sale proceedings are therefore likely to be initiated. In the first place, a mortgage need not involve a complex commercial transaction among knowledgeable parties, and it may well be the least sophisticated creditor whose security interest is threatened by a tax sale. More importantly, a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation.* * * " 462 US at 799.

Although the Indiana Code amendment providing for requested notice by mail to mortgagees was not part of the statutory scheme before the Court, we think that it is only another example of "a party's ability to take steps to safeguard

its interests [which] does not relieve the State of its constitutional obligation." 462 US at 799.[4]

Grant County v. Guyer, supra, upheld the constitutionality of *former* ORS 312.040(1) insofar as it provided notice by publication to owners of property. The court considered the entire statutory scheme of real property taxation in ruling that notice by publication was sufficient to apprise an owner of the commencement of a foreclosure proceeding. The statutes required a notice of current and delinquent taxes to be mailed each year to the taxpayer. The notice of delinquency must advise the taxpayer of the date on which foreclosure proceedings may be commenced. Because taxes must be delinquent for three years before a foreclosure may be commenced, the taxpayer receives at least three mailed notices of delinquency warning of the possibility of foreclosure. *Former* ORS 312.040(1) required four weekly publications of the list of properties subject to foreclosure. The county could have chosen to notify an owner of foreclosure by personal service or certified mail. *Former* ORS 312.040(2) and (3). In addition, the owner must receive notice by certified mail of the pending expiration of the redemption period following a foreclosure sale and of the effect of the owner's failure to redeem. 296 Or at 17-19. The court held that publication was constitutionally sufficient notice to an owner of the foreclosure proceeding "[b]ecause it is supplemental to other statutorily mandated notices given by mail * * *." 296 Or at 22.[5]

We are persuaded by the reasoning of *Mennonite Board of Missions v. Adams, supra,* and *Grant County v. Guyer,*

---

[4] We are not aware of any action taken by the Indiana legislature regarding the notice of foreclosure provision subsequent to the decision in *Mennonite,* nor can we find any later state or federal cases which have considered the constitutionality of Indiana's statutory scheme including the amendment providing for requested notice to lienholders.

[5] The Supreme Court of Washington recently held that a city's failure to mail notice of the actual foreclosure proceeding to the owner violated due process. *Brower v. Wells,* 103 Wash 2d 96, 690 P2d 1144 (1984). The statutory scheme invalidated in *Brower* differed from Oregon's statutes considered in *Grant County* in that Washington law provided *only published* notice to the owner of the foreclosure action and *no* notice of other rights, such as the right to redeem. As noted above, the Oregon scheme provided mailed notice to the owner of the expiration of the redemption period. Because of the factual differences between these two cases, the dissent's statement that the Oregon Supreme Court has interpreted *Mennonite* more narrowly than other courts, (77 Or App at 285) is incorrect.

*supra,* that notice by publication was not reasonably calculated to apprise plaintiff, a possessor of a recorded security interest, of the foreclosure proceeding and that defendant's holding the foreclosure sale without providing plaintiff with at least mailed notice deprived plaintiff of a valuable property right without due process of law. There is no contention in this case that plaintiff's beneficial interest in the trust deed is less significant than a mortgagee's interest. In fact, a mortgagee's interest may, and often does, exceed the owner's interest in the property, so the mortgagee should also be entitled to mailed notice of foreclosure. *Mennonite* holds that published notice must be supplemented by mailed notice to the mortgagee or by personal service. Because the county is obligated by the Fourteenth Amendment affirmatively to provide the holder of a recorded lien with, at least, mailed notice of the foreclosure, we do not think that plaintiff's failure to file a request for notice under ORS 312.140(1) relieved the county of its constitutional obligation. *Mennonite* recognized that a mortgagee is not always an institutional lender and could be an individual who is not sophisticated in legal matters and that the notice must be adequate to protect "the least sophisticated creditor." 462 US at 799. Although *Mennonite* did not consider the amendment to the Indiana Code providing for requested notice to lienholders, we think that the Court's decision would have been the same had it considered that provision.[6]

Our decision in this case is in accord with a recent opinion by a New York appellate court. *Foreclosure (Mfrs. Trust Co.),* 103 App Div 2d 636, 481 NYS 2d 547 (1984), presented the same issue as this case, that which was left

---

[6] The dissent inexplicably interprets the holding of *Mennonite* to say that the county can satisfy its constitutional burden by requiring an affirmative act *by the lienholder,* and cites *Rosewell v. Chicago Title and Trust Co.,* 99 Ill 2d 407, 459 NE2d 966, *appeal dismissed,* 467 US 1237 (1984), as support. (77 Or App at 286) The Illinois statutory scheme in that case provided that all interested parties shall receive notice of the pending expiration of the redemption period by imposing the burden *on the buyer* at the tax sale to notify such interested parties. This notice must include personal notice by the sheriff, notice by certified mail *and* three publications in a newspaper. The Illinois court distinguished *Mennonite* on a number of grounds and emphasized, in upholding the statute, that in Illinois a deed issues to the tax buyer only after a judicial proceeding of which all interested parties must receive personal notice. The scheme in Illinois differed from that in Oregon, because in Illinois the mortgagee received personal notice in time to protect its interest *without* having to undertake any affirmative acts. *Rosewell* does not support the dissent's position.

undecided in *Mennonite.* In that case the county did not provide the mortgagee with notice of foreclosure other than by publication. The mortgagee had recorded its mortgage with the county, but had not requested notice of an impending foreclosure, as it might have under county law. The majority held that the mortgagee's failure to file a request for notice did not relieve the county of its constitutional obligation:

> "In *Mennonite (supra),* the Supreme Court clearly stated that the onus is on the State to provide notice, notwithstanding that the mortgagee, which is often a sophistocated creditor, might take steps to protect its own interest. '[A] party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation' (*Mennonite Board of Missions v. Adams,* 462 U.S. 791, [799]). In short, the State has the constitutional obligation to provide mortgagees notice before divesting them of their interest. That duty cannot be abrogated by requiring the mortgagee to request notice. The State has an obligation to all mortgagees, not merely those who request notice." 103 App Div 2d at 639.

We agree completely with that reasoning.

Defendant argues that requiring it to mail notice of foreclosure to persons with recorded liens or other recorded security interests in real property imposes an onerous burden. We do not think so. Neither, apparently, did the 1985 legislature, which amended ORS 312.040. *See* n 1, *supra.* It is not difficult to discover from the records who may have a recorded interest in a parcel of real property. ORS 93.610 requires a county to provide separate books for recording deeds and mortgages. ORS 93.630 requires that direct and inverted indexes be kept for each of those books. It is not difficult for the county to discover from its records that the owner gave a mortgage and that the mortgagee subsequently assigned its interest to another party. Contrary to the dissent's assertion, (77 Or App at 292) this effort would not require a complete title search. Requiring the county to check its own records is justified by the considerable benefit to a person with a security interest in property subject to foreclosure who, if duly notified, would be able to appear in the proceeding to protect its interest. Plaintiff did state a claim for relief.

Reversed and remanded.

**YOUNG,** dissenting.

The majority unnecessarily gives *Mennonite Board of Missions v. Adams,* 462 US 791, 103 S Ct 2706, 77 L Ed 2d 180 (1983), the broadest possible interpretation and application, thereby impermissibly expanding the process that is due under the Fourteenth Amendment.

The practical effect of the majority's decision is to require a county, when commencing tax foreclosure proceedings under *former* ORS 312.040(1), to conduct a title search of the property to be foreclosed. If the search discloses that there are lienholders of record, the couty would then have to give notice of the foreclosure to the lienholders. Notice would be required regardless of whether the lienholder has taken advantage of the "request for notice" provisions of ORS 312.140. When the broad language of *Mennonite* is limited to the facts of that case, and when it is considered in the light of other decisions of the United States Supreme Court, a different picture emerges.[1]

In *Mennonite,* publication was the sole means of giving notice to lienholders of pending tax foreclosure proceedings. In the present case, when plaintiff acquired a security interest in the property, ORS 312.140 was in effect.[2] I believe that that factual difference by itself is dispositive.

The majority states that the requested notice provisions of ORS 312.140 are merely an example of "a party's ability to take steps to safeguard its interest [which] does not relieve the state of its constitutional obligation," quoting *Mennonite Board of Missions v. Adams, supra,* 462 US at 799. 77 Or App at 288-89. I do not take the quoted statement to mean that the state cannot require or seek assistance to meet its constitutional burden.[3] *Mennonite* instead means that the

---

[1] The Oregon Supreme Court has interpreted *Mennonite* more narrowly than have some other state appellate courts. *Compare Grant Co. v. Guyer,* 296 Or 14, 672, P2d 702 (1983), with *Brower v. Wells,* 103 Wash 2d 96, 690 P2d 1144 (1984).

[2] ORS 312.140 was enacted in 1939. Or Laws 1939, ch 485. The legislative history is unavailable.

[3] The Illinois Supreme Court apparently agrees. In *Rosewell v. Chicago Title and Trust Co.,* 99 Ill 2d 407, 459 NE2d 966, *appeal dismissed,* 467 US 1237 (1984), the court held constitutional an Illinois statute which required the buyer at a tax foreclosure sale to notify, after foreclosure but before the expiration of the redemption period, the owner, occupants and lienholders of the subject property. In that case, the

adequacy of whatever step the state has taken to provide constitutionally adequate notice is the relevant inquiry. The state has taken the step of enacting ORS 312.140.

The *Mennonite* dissent noted:

> "Chief Justice Marshall wrote long ago that 'it is part of common prudence for all those who have any interest in [property], to guard that interest by persons who are in a situation to protect it.' The Mary, 13 US (9 Cranch) 126 (1815). We have never rejected this principle, and, indeed, we held in Mullane that '[a] State may indulge' the assumption that a property owner 'usually arranges means to learn of any direct attack upon his possessory or proprietary rights.' 339 US, at 316. When we have found constructive notice to be inadequate, it has always been where an owner of property is, for all purposes, *unable* to protect his interest because there is no practical way for him to learn of state action that threatens to affect his property interest." 462 US at 807. (Emphasis in original.)

I do not believe that the majority in *Mennonite* rejected the principle stated in the dissent. On the contrary, I believe that the majority meant that, because publication was the sole authorized means of notice under the relevant statute, there was no practicable way for an Indiana mortgagee to receive actual knowledge of a pending tax foreclosure. On the other hand, ORS 312.140 does provide a practical, simple and systematic means for a recorded lienholder to acquire *actual* notice. In the present case, plaintiff did not take advantage of the statute. That being so, the balancing test required by *Mullane v. Central Hanover Tr. Co.*, 339 US 306, 70 S Ct 652, 94 L Ed 865 (1950), results in the conclusion that the notice by publication given in this case was constitutionally adequate.

In its now classic statement, the *Mullane* court stated:

> "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to

---

state had shifted its burden of notification *entirely* to the tax sale buyer. In contrast, under ORS 312.140, the *county* must mail the notice if it has been requested. *See also Foreclosure (Mfrs. Trust Co.)*, 103 App Div 2d 636, 481 NYS2d 547, 550-51 (1984) (Boomer, J., concurring).

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

"The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. *But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.*" 339 US at 314. (Emphasis supplied; citations omitted.)

It is axiomatic that persons are presumed to know the law. *See, e.g., Hood River County v. Dabney,* 246 Or 14, 28, 423 P2d 954 (1967). The axiom applies with equal force to lienholders. Thus, plaintiff is presumed to know that, if it did not request notice under ORS 312.140, it would only receive notice by publication under *former* ORS 312.040(1). *See Knapp v. Josephine County,* 192 Or 327, 340, 235 P2d 565 (1951). With that knowledge, plaintiff elected not to take advantage of ORS 312.140 by notifying the tax collector and requesting notice. That should relieve the defendant of its notice burden.

I would affirm and, therefore, respectfully dissent.

Joseph, Chief Judge, Gillette and Warden, Judges, join in this dissent.